# UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: | : | Chapter 7 |
| | : | |
| **Christine C Heasley,** | : | Bky. No. 25-12073 (DJB) |
| | : | |
| Debtor. | : | |

## OPINION

Before the Court is the Debtor's request for sanctions pursuant to Federal Rule of Bankruptcy Procedure 9011 and the Debtor's request for damages resulting from violations of the stay pursuant to § 362(k) of the Bankruptcy Code. The Debtor alleges that the respondent's filing and prosecuting a now-withdrawn motion objecting to the Debtor's discharge is sanctionable. The Debtor also identified a series of postpetition collection emails sent to her and seeks damages stemming from that alleged stay violation. The Court finds that the respondent's actions are sanctionable and will issue appropriate sanctions. However, the Court finds that the Debtor failed to substantiate any damages resulting from any stay violation and therefore no relief will be granted pursuant to § 362(k) of the Bankruptcy Code.

## I. BACKGROUND

Christine C. Heasley (the "Debtor") filed her individual chapter 7 bankruptcy on May 27, 2025. The Debtor listed a $50,062.51 unsecured undisputed debt owed to We Care Legal Services, PLLC ("We Care") on her schedules. The following day, the bankruptcy court docketed its standard notice of a chapter 7 bankruptcy case which informs creditors of many

1

details, including the method for opposing the bankruptcy discharge. [Dkt. No. 7]. This notice was sent by first-class mail to We Care on May 30, 2025. [Dkt. No. 8].

We Care attended and participated in the meeting of creditors, held on August 21, 2025. On August 24, 2025, We Care filed a "Motion Objection to Chapter 7 Discharge" (the "Discharge Objection"), citing §§ 727(a)(4) and (a)(6) of the Bankruptcy Code as statutory grounds for denying the Debtor a discharge. We Care set this Discharge Objection for hearing on the Court's standard chapter 7 motion hearing date of September 30, 2025. [Dkt. No. 15]. The Debtor promptly objected to the Discharge Objection and indicated that a motion for sanctions under Federal Rule of Bankruptcy Procedure 9011(b) would soon follow. [Dkt. No. 18]. The Debtor was discharged on August 28, 2025.

On September 23, 2025, the Debtor filed her Motion for Sanctions (the "Motion"). [Dkt. No. 23]. Notably, Debtor's attorney certified that the Motion along with a transmittal letter were served on We Care by first-class mail on August 30, 2025. [Dkt. No. 23-3]. The Debtor also filed a motion to expedite the hearing on the Motion to allow it to be held concurrently with the hearing on We Care's Discharge Objection; the request to expedite was granted and both matters were set for hearing on September 30, 2025. [Dkt. No. 24]. The day before the hearing, We Care withdrew its Discharge Objection. [Dkt. No. 30].

The Court held an evidentiary hearing on the Debtor's Motion at which the Debtor testified and was subject to cross-examination by We Care. The Court also received exhibits identified on the record and heard argument from counsel. The matter is now ripe for disposition.[1]

---

[1] The following constitutes the Court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052 as incorporated by Federal Rule of Bankruptcy Procedure 9014. The Court has jurisdiction pursuant to 28 U.S.C. § 1334 and the Standing Order

2

## II. DISCUSSION

The Motion presents two (2) distinct matters for adjudication. First, the Debtor argues that the improper filing of the Discharge Objection and We Care's attorney's subsequent conduct is sanctionable under Federal Rule of Bankruptcy Procedure 9011 ("Rule 9011"). Second, the Debtor alleges that We Care's actions in sending postpetition collection notices violated the automatic stay and asks for an award of damages under § 362(k) of the Bankruptcy Code. The legal standard and relevant analysis for each cause of action are entirely separate.

**A. We Care's behavior in filing and prosecuting the Discharge Objection is sanctionable**

The Debtor made three (3) arguments regarding what conduct she believed was sanctionable pursuant to Rule 9011. First, the Discharge Objection was procedurally improper and needed to be brought as an adversary proceeding rather than by motion. Second, We Care asked several questions during the meeting of creditors that were frivolous and solely for the purpose of harassing the Debtor. Third, the merits of the Discharge Objection were based on legally unsound theories or de minimis gripes with Debtor's schedules which could never meet the requirements of § 727 of the Bankruptcy Code. While the Debtor is correct on the first point only, the Court finds that We Care's behavior in prosecuting the Discharge Objection was objectively unreasonable and therefore deserving of sanctions.

Pursuant to Rule 9011(b):

---

of Reference of the Eastern District of Pennsylvania as the matter arises in and/or is related to a case under the Bankruptcy Code. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. The matter presented by the Motion is a core matter pursuant to 28 U.S.C. § 157(b). To the extent that the matter is deemed non-core and/or the Court is without constitutional authority to render a final decision on the Motion, the following shall constitute the Court's report and recommendation in accordance with 28 U.S.C. § 157(c).

> Representations to the Court. By presenting to the court a petition, pleading, written motion, or other document—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that, to the best of the person's knowledge, information, and belief formed after an inquiry reasonable under the circumstances:
>
> (1) it is not presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase litigation costs;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument to extend, modify, or reverse existing law, or to establish new law;
>
> (3) the allegations and factual contentions have evidentiary support—or if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence—or if specifically so identified, are reasonably based on a lack of information or belief.

When a party whose behavior is the subject of a Rule 9011 motion is served with the motion, the rule provides them a 21-day safe harbor during which they can withdraw the subject filing without penalty and the motion for sanctions will never come before the Court. Fed. R. Bankr. P. 9011(c)(2)(B). However, after the 21-day period runs, the motion can be filed and Court can hear the motion and may impose sanctions to deter improper conduct, as guided by Rule 9011(c).

The Court must first determine that Rule 9011(b) has been violated. For the Court to find a violation of Rule 9011, it does not need to make a finding of bad faith; rather, imposing Rule 9011 sanctions is appropriate where conduct is shown to be "objectively unreasonable." See In re Taylor, 655 F.3d 274, 282 (3d Cir. 2011) (quoting Fellheimer, Eichen & Braverman, P.C. v. Charter Tech., Inc., 57 F.3d 1215, 1225 (3d Cir.1995)). Once a violation has been identified, it is within the Court's discretion whether to impose sanctions on the offending party. See Bernhard v. Kull (In re Bernhard), 638 B.R. 331, 336 (Bankr. E.D. Pa. 2022) (citing Waltz v. Cty. of

4

Lycoming, 974 F.2d 387, 390 (3d Cir. 1992)).  Sanctions, however imposed, must be "limited to what suffices to deter repetition of the conduct" and if warranted for that purpose, the Court may order the offending party to pay "to the movant of all or part of the reasonable attorney's fees and other expenses directly resulting from the violation."  Fed. R. Bankr. P. 9011(c)(4)(A).  If the Court imposes sanctions, it "must describe the sanctioned conduct and explain the basis for the sanction."  Fed. R. Bankr. P. 9011(c)(5).

We Care's behavior during the meeting of creditors is not sanctionable.  The testimony indicated that We Care asked about and identified several errors and inconsistencies in the Debtor's filings.  These errors included the Debtor's failure to identify the precise method by which she valued her house, the Debtor's failure to list her phone as an asset, the Debtor's failure to identify an idle and forgotten Paypal account, a potential two-month discrepancy in Debtor's work history based on onboarding days that were paid during a later pay cycle, and arguably de minimis work Debtor's spouse performed for friends and family.  The Debtor argues that these lines of questioning were improper because they pertained to matters of insignificant value and were intended to harass the Debtor.  Neither party presented the Court a record of the meeting of creditors; however, in argument, counsel for both parties conceded that the trustee conducting the meeting did not preclude or limit the questioning nor did the Debtor's attorney object to the questions during the meeting.  The meeting of creditors is intended to give creditors, like We Care, the opportunity to probe a debtor about her property, debts, income, and expenses.  See 11 U.S.C. § 343 (providing that creditors may "examine the debtor" at the meeting of creditors).  Based on this record, the Court cannot find that We Care's behavior at the meeting was objectively unreasonable.

5

Next, We Care's decision to object to a discharge, as a merits matter, is also not sanctionable. The Court will not conduct a full review of the would-be merits of the Discharge Objection. The Discharge Objection has been withdrawn, and it is unclear from this record whether a procedurally proper objection to discharge would have been successful. While a cursory review suggests that certain legal contentions may have been specious, the core of the Discharge Objection appears earnest. We Care identified several inconsistencies in the Debtor's filings and her answers during the meeting of creditors. Section 727 of the Bankruptcy Code prevents the Court from granting a discharge if "the debtor knowingly and fraudulently, in or in connection with the case—(A) made a false oath or account." 11 U.S.C. § 727(a)(4). While it would certainly have been a difficult evidentiary road ahead, the Court cannot conclude the Discharge Objection, as pled, contained legal contentions that were without any evidentiary support or not warranted by existing law. The Court cannot find it is objectively unreasonable to bring motions with bad odds of success. Had We Care brought a timely adversary proceeding, the proceeding may have been short-lived, but it would not have been sanctionable.

However, the Debtor's first argument is her strongest. The Court finds that We Care's behavior in bringing and prosecuting its procedurally deficient motion is sanctionable conduct. Bringing an objection to discharge is a serious matter with profound consequences for a chapter 7 debtor. A discharge is often the sole and most important end for an individual debtor. When a creditor imperils that end, a debtor must expend time and resources to meet that challenge. When We Care filed its Discharge Objection, the Debtor responded immediately with an objection lodged on the docket the very next day noting the procedural impropriety and her intention to file a motion pursuant to Rule 9011. Three (3) days after that objection, Debtor's attorney sent a letter and prospective Rule 9011 motion directly to We Care, informing them that

the Discharge Objection was procedurally defective and raising substantive opposition.[2]  After the 21-day safe harbor expired, the Debtor filed the Motion.  Further, the Debtor sought an expedited hearing thereon (which was granted) and, in compliance with this Court's practices and procedures, filed witness and exhibit lists on the docket in anticipation of the evidentiary hearings.  We Care filed nothing until the day before the hearings when it withdrew the Discharge Objection.

      We Care's behavior is sanctionable.  To begin, the requirement that an objection to discharge be filed as a complaint in an adversary proceeding is not an arcane one, buried in the rules.  The plain language of Federal Rule of Bankruptcy Procedure 7001(d) provides that "a proceeding to revoke or object to a discharge" must be brought as an adversary proceeding.[3]  Further, at the inception of this case, We Care, along with every other creditor, received a Notice of Chapter 7 Bankruptcy Case from the Court stating "You must file a complaint: if you assert that the debtor is not entitled to receive a discharge of any debts under any of the subdivisions of 11 U.S.C. § 727(a)(2) through (7) . . ."  [Dkt. No. 7].  While the erroneous filing of a motion, rather than a complaint, would not normally justify sanctions, this particular motion was also poorly drafted.  It contained placeholder language in multiple places and left blank a purported statutory reference.  This suggests that from the start, We Care was not diligent with its review of the docket or its own filings.

---

[2]    In closing argument, We Care's attorney claimed that it never received the letter and prospective 9011 motion.  However, We Care introduced no evidence on this issue and the Court relies on Debtor's certification that the letter and motion were sent on August 30, 2025.  [Dkt. No. 23-3].

[3]    This rule includes three (3) exceptions, not relevant here.

Next, We Care's apathy forced the Debtor to prepare to litigate up until the day before the hearing. We Care filed a contested motion and scheduled an evidentiary hearing on a significant matter, knowing that it would necessarily place a burden on the Debtor to respond. The Debtor here promptly objected on the docket and sent a letter informing We Care of the procedural problems with its motion; We Care did nothing.[4] When the Rule 9011 safe harbor period had run, the Debtor filed its motion and request to expedite; We Care did nothing. Three days prior to the hearings on both motions, the Debtor filed her witness and exhibit lists in anticipation of evidentiary hearings, in compliance with this Court's required procedures; We Care did nothing. It was only on the eve of the hearings that We Care opted to withdraw its Discharge Objection arguing that just now it understands that its motion was procedurally improper. Mea culpa says We Care.

Mea culpa indeed. The Court finds that, when viewed as a whole, We Care's behavior in prosecuting its Discharge Objection was objectively unreasonable and a violation of Rule 9011(b). By maintaining the procedurally deficient Discharge Objection until 22 hours before the scheduled hearing, We Care filed and continued to advocate a motion that it knew, or should have known, was frivolous and unwarranted by law. Its behavior suggests it failed to review the

---

[4] While the Court might be able to overlook an initial procedural error, We Care's failure to correct its error—in the face of plain information identifying the error—is more concerning. This district has previously published guidance on how parties must continually evaluate their positions to ensure ongoing compliance with Rule 9011. See In re Vascular Access Centers, L.P., 646 B.R. 735, 754-55 (Bankr. E.D. Pa. 2022) ("The requirements of Rule 9011 not only apply to the time papers are signed, filed, or submitted to the court, but also to later advocating certain representations to the court. Continuing to represent a position to the court after learning that the position no longer has merit violates Rule 9011.") (internal quotation marks and citations omitted). A movant has an ongoing responsibility to monitor and reevaluate the propriety of their motion and to modify or withdraw that motion if necessary. See id. (citing In re Jazz Photo Corp., 312 B.R. 524, 536 (Bankr. D.N.J. 2004)). Rule 9011 placed a burden on We Care to act appropriately—"up to dismissing [its] cause of action"—if it learned, or had reason to learn, its motion was necessarily deficient. In re Vascular Access, 646 B.R. at 755.

8

Court's communications on the docket, the Debtor's communications, its own filings, and this Court's practices and procedures. These actions—or more accurately, inactions —justify the imposition of sanctions.

Having found a violation of Rule 9011(b) for the objectively unreasonable filing and prosecution of a procedurally improper filing, the Court will use its discretion to impose an appropriate sanction. We Care must understand that it is unacceptable to file slapdash, improper motions only to disappear and allow a debtor to squirm. This is particularly egregious behavior given that the Debtor here is a chapter 7 individual debtor with five (5) dependent children and a negative monthly income. [See Dkt. No. 1, Schedule I/J]. The costs and fees associated with this unnecessarily prolonged litigation should not fall on the Debtor. Therefore, the Court finds that an appropriate sanction for the purpose of specifically deterring this behavior is to require We Care to pay the Debtor's "reasonable attorney's fees and other expenses directly resulting from the violation." Fed. R. Bankr. P. 9011(c)(4)(iii). Such amount reflects the time spent and costs incurred by the Debtor and her professional to address the Discharge Objection but is not so substantial as to be punitive. The Debtor's attorney is directed to submit a certification and itemization of his fees and any costs directly related to responding to and litigating We Care's Discharge Objection.[5] The Court will issue a separate disposition of the amount of reasonable fees and expenses payable for such sanction by separate Order.

**B. The Debtor failed to establish damages under § 362(k) of the Bankruptcy Code**

Entirely distinct from the facts surrounding the Rule 9011 claim, the Debtor asserts that a series of eight (8) postpetition email communications sent by We Care constitute willful

---

[5] The Court stresses that the certification and fees sought must be limited to those directly related to responding to the Discharge Objection.

9

violations of the stay. Therefore, the Debtor seeks damages on account of those violations. The Debtor argues that her emotional distress resulting from these violations is compensable. While the Court finds that We Care did willfully violate the stay, because the Debtor failed to establish any quantifiable damages stemming from those violations, no relief can be granted pursuant to § 362(k) of the Bankruptcy Code.

The automatic stay bars any postpetition attempt to obtain estate property or to collect from a debtor on a claim that arose prior to the bankruptcy filing. See 11 U.S.C. §§ 362(a)(3), (6). If a creditor violates the automatic stay by taking such action, the Bankruptcy Code instructs that "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees . . ." 11 U.S.C. § 362(k). The Court's analysis of the Debtor's request is guided by the United States Court of Appeals' decision in Cal. Coast Univ. v. Aleckna (In re Aleckna), 13 F.4th 337 (3d Cir. 2021). The Debtor here must prove (i) she is an individual; (ii) the creditor violated the automatic stay; (iii) the violation was "willful"; (iv) the violation caused "injury" to the Debtor; and (v) damages. See id. at 342, 344 n.37, 346 n.48.[6] The Debtor bears the burden of proof, and many courts have recognized

---

[6] This formulation of the elements of an action under § 362(k) of the Bankruptcy Code may appear to differ from other opinions from this district. See Toppin v. Williams (In re Toppin), 637 B.R. 88, 113 (Bankr. E.D. Pa. 2021), aff'd, 645 B.R. 773 (E.D. Pa. 2022) ("First, the offending party must have violated the automatic stay. Second, the violation of the stay must have been willful. Finally, the willful violation must have caused Debtors some injury."); In re Scungio Borst & Assocs., LLC, 652 B.R. 644, 652 (Bankr. E.D. Pa. 2023) ("In order to establish a claim pursuant to § 362(k)(1), the moving party must show by a preponderance of the evidence that (1) the creditor violated the automatic stay; (2) the violation of the stay was willful; and (3) the willful violation caused some injury."); see also Dean v. Carr (In re Dean), No. 1:11-bk-05680-MDF, 2012 Bankr. LEXIS 4566, at *15 (Bankr. M.D. Pa. Oct. 1, 2012) ("An individual seeking to obtain damages under § 362(k) for a violation of the stay has the burden of establishing three elements by a preponderance of the evidence: (1) that the action taken was in violation of the automatic stay; (2) that the action was willful; and (3) that the violation caused actual damages."). The undersigned does not interpret this elemental construction to be in

that damages must be proven with specificity, based on concrete evidence—it is not proper for the Court to speculate about the amount of damages. [7] See In re Nixon, 419 B.R. at 291 (refusing to award damages based on a debtor's failure to present specific evidence on the value of unnecessarily purchased hot water heater caused by stay violation); see also Heghmann v.

---

tension with other formulations.  Rather, the inclusion of elements (i) and (v) are intended to draw out requirements of the statute that are implicit in other formulations.

Specifically, elements (iv) and (v) are made explicit to highlight the separation between "injury" and "damages."  Injury is undoubtedly a requirement of the statute.  See In re Aleckna, 13 F.4th at 346 ("To recover such relief, the debtor must be 'injured' by the stay violation.").  The Debtor must allege and prove "cognizable injury" for purposes of recovery under § 362(k) under the Bankruptcy Code.  Id. at 347 (failure to receive a complete transcript without resort to the court was a cognizable injury); Lansaw v. Zokaites (In re Lansaw), 853 F.3d 657, 668 (3d Cir. 2017) (clarifying that § 362(k) of the Bankruptcy Code was intended to protect debtors from both "pecuniary and non-pecuniary injuries").  Whatever the outer limits are to establish a cognizable injury is not necessary for the disposition of this Motion.

Proof of damages stemming from an injury is a different issue.  Not all injuries result in awardable damages.  Section 362(k) of the Bankruptcy Code does not award "statutory damages".  Rather, the statute requires proof of "actual damages, including costs and attorneys' fees" for recovery.  This has left open the question of whether a movant is entitled to collect attorneys' fees if they are unable to prove any other form of actual damages.  See Boltz-Rubinstein v. Bank of America (In re Boltz-Rubinstein), 596 B.R. 494, 508 n.23 (Bankr. E.D. Pa. 2019) (collecting cases).  Many courts have expressed concern with potentially vexatious litigation around otherwise innocuous stay violations with an eye toward collection of only attorneys' fees.  See In re Toppin, 637 B.R. at 113; In re Miller, 447 B.R. 425, 434 (Bankr. E.D. Pa. 2011).  In re Aleckna seems to bless the award of attorneys' fees, even substantial amounts, so long as the movant is able to identify redressable injuries; those redressable injuries may even be non-financial.  See 13 F.4th at 346-47.  However, it is possible for a movant to have suffered an injury but fail to substantiate her damages, and alternatively, movants may come forward with alleged "damages" in the form of attorneys' fees but be denied relief based on an inability to prove the requisite injury.  See e.g. In re Toppin, 637 B.R. at 113; In re Miller, 447 B.R. at 435.

[7]     There is a division of authority as to whether the proper evidentiary standard is "clear and convincing" or "preponderance of the evidence."  See In re Nixon, 419 B.R. 281, 283 n.3 (Bankr. E.D. Pa. 2009).  The Court does not need to resolve this issue because the Debtor here failed to satisfy either standard as to actual damages.

11

Indorf (In re Heghmann), 316 B.R. 395, 405 (B.A.P. 1st Cir. 2004); Sculky v. IRS (In re Sculky), 182 B.R. 706, 708 (Bankr. E.D. Pa. 1995).

A violation of the stay is "willful" if the creditor knows that the bankruptcy petition was filed, and the violative act was an intentional one. See In re Lansaw, 853 F.3d at 664 n.4 (quoting Landsdale Family Rests., Inc. v. Weis Food Serv. (In re Landsdale Family Rests., Inc.), 977 F.2d 826, 829 (3d Cir. 1992)). Willfulness does not require that the creditor have had the specific intent to violate the automatic stay. Id. Courts that have encountered automated computerized collection efforts by creditors have considered them "willful" violations of the stay. See In re Nixon, 419 B.R. at 288 (recognizing that "ministerial" or "clerical" inadvertent mistakes are still "willful" for purposes of § 362(k) of the Bankruptcy Code.); Defeo v. Winyah Surgical Specialists, P.A. (In re Defeo), 635 B.R. 253, 263 (Bankr. D.S.C. 2022) ("It appears that the majority of bankruptcy courts have held that a violation of the automatic stay occurring from intentional creditor action following human clerical or computer error still constitutes a 'willful' violation.")).

A successful plaintiff under § 362(k) of the Bankruptcy Code must establish cognizable injury. See In re Aleckna, 13 F.4th at 347. Emotional distress is a cognizable injury. See In re Lansaw, 853 F.3d at 671. However, damages for emotional distress can be difficult to prove and often require extrinsic evidence like hospital bills, physical injury, or corroborating witness testimony. See id. at 669. Finding damages for emotional distress based solely on the self-serving testimony of the movant is typically reserved for cases where conduct is "patently or obviously egregious." In re Wingard, 382 B.R. 892, 904 (Bankr. W.D. Pa. 2008); see also In re Johnson, 601 B.R. 365, 380 (Bankr. E.D. Pa. 2019). In the absence of damages for a cognizable

12

injury to the movant, courts are reluctant to award damages solely in the form of costs and attorneys' fees. See In re Toppin, 637 B.R. at 113.

The automatic stay went into effect on May 27, 2025, when the Debtor filed her chapter 7 petition. We Care then received notice of the bankruptcy from the Court issued the following day. We Care undoubtedly violated the stay when it sent collection emails to the Debtor on June 4, June 19, July 4, July 19, August 3, and August 18.[8] While the mailings seem to be the result of an automated service, the emails were clearly intentional acts and therefore "willful" for purposes of the statute. The Court does not take We Care to contest this characterization.

Despite the presence of a willful violation of the stay, the Court must deny any compensatory relief because the Debtor failed to present any evidence of damages. The Debtor's testimony revealed that she saw, read, and downloaded each of the collection emails sent to her by We Care.[9] She testified that she felt a sense of dread and found the emails to be constant stressors. No other evidence regarding damages was presented; the Court heard nothing regarding medical treatment, physical injuries, or corroborating testimony. Moreover, there was no evidence of missed work, lost wages, or travel expenses—either in connection with addressing the violation or with attending the hearing. Finally, there was no evidence that attorneys' fees or costs were incurred as a result of the violation. While it is undeniable the

---

[8] The Debtor also testified to two (2) additional communications sent September 2 and 17. However, the Debtor received her discharge on August 28, 2025. [Dkt. No. 19]. Because this is an individual chapter 7 case, the automatic stay terminated when the discharge was granted. See 11 U.S.C. § 362(c)(2). Therefore, the propriety of these actions is not being evaluated.

[9] We Care argued that the Debtor failed to mitigate her damages by failing to take affirmative steps to prevent the mailings. Indeed, the Debtor did receive several of the mailings and failed to alert her attorney or We Care. When pressed, the Debtor did not know when she eventually informed her attorney about them. While mitigation and general tort concepts of causation may apply, it is irrelevant here because the Court finds there were no damages incurred by the Debtor.

Debtor had an attorney prepare the Motion and attend the hearing, there was no testimony, exhibits, or other admissible evidence upon which the Court can find that the Debtor actually incurred fees in connection with the actions constituting the willful violations of the automatic stay. Based on this record—and taking into account the Debtor's burden of proof—the Court cannot "presume" damages exist.

The Court does not find the sending of six (6) automated collection emails to be "patently or obviously egregious" such that the Court would award damages for emotional distress based on the Debtor's testimony alone. Compare In re Wingard, 382 B.R. at 906 (finding automated collection calls and letters by a creditor to be "repugnant of our bankruptcy process" but not patently egregious to justify emotional distress without extrinsic evidence of harm) with Wagner v. Ivory (In re Wagner), 74 B.R. 898, 900-01, 906 (Bankr. E.D. Pa. 1987) (awarding damages for "shock, alarm and fear" against a creditor who broke into debtor's house and threatened to "blow [his] brains out."). Because Debtor failed to submit evidence of any other form of alleged damages, the Court finds no basis on which to grant relief pursuant to § 362(k) of the Bankruptcy Code.

### III. CONCLUSION

We Care and the Debtor may have a contentious history and We Care may be unhappy with the results of this Debtor's bankruptcy. However, We Care is not free to flout the Federal Rules of Bankruptcy Procedure or Bankruptcy Code with its actions. We Care violated the automatic stay when it sent collection emails to the Debtor, but fortunately for it, no damages resulted. We Care violated Rule 9011 when it filed and unreasonably litigated its Discharge Objection, and appropriate sanctions will be imposed.

14

An appropriate order will issue.

Date: November 03, 2025

**DEREK J. BAKER**
**U.S. BANKRUPTCY JUDGE**